IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| LOURDES M. SANTIAGO, et al., | |
| Plaintiffs | |
| vs. | CIVIL NO. 98-1414(JP) |
| TREL LLOYD and LUPI'S ENTERPRISES, INC., | |
| Defendants | |

**OPINION AND ORDER**

### I. Introduction and Background

The Court held a jury trial in the above-captioned case, commencing on August 23, 1999. The Court previously granted summary judgment for Defendants Lupi's Enterprises Inc. ("Lupi's") and Trel Lloyd ("Lloyd"), dismissing as time-barred Plaintiff Lourdes Santiago's ("Santiago") claims for sexual harassment and national origin discrimination. In addition, the Court declined to accept supplemental jurisdiction over Santiago's Puerto Rico law claims, and dismissed all claims against Lloyd, co-owner of Lupi's, in his personal capacity. Thus, the trial involved only Santiago's claim for retaliation against Lupi's under Title VII, 42 U.S.C. 2000e. Plaintiff's retaliation claim was based on her complaints to Eduardo Figueroa, one of Lupi's owners and one of Santiago's supervisors, regarding alleged sexual harassment by Lloyd and his eventual reduction of her duties and responsibilities, via letter, which Santiago claims constituted a constructive discharge.

At the conclusion of Plaintiff's case in chief, Lupi's moved





AO 72A
(Rev.8/82)

CIVIL NO. 98-1414 (JP)           2

for a judgment as a matter of law under Rule 50 of the Federal Rules of Civil Procedure. Lupi's motion was based on the following grounds: (1) the 1991 Civil Rights Act provides a cap on damages for employers, such as Lupi's, with less than 100 employees of $50,000.00 in compensatory and punitive damages; (2) the evidence presented does not reach the threshold that must be met to award punitive damages under Title VII against Lupi's; (3) there is not sufficient evidence in the record to establish a case for a constructive discharge under First Circuit case law; (4) the record does not support a claim for retaliation under Title VII based on complaints of sexual harassment; (5) there is no proof that Plaintiff Santiago mitigated her damages; and (6) Santiago's retaliation claim is time-barred.

After hearing the arguments of both parties and based on the evidence in the record, the Court hereby **GRANTS** Defendant's Motion and dismisses Plaintiff's remaining claim for Title VII retaliation because no jury could conclude, by a preponderance of the evidence, that she has met the elements of her claim.

II. **Discussion**

   A. **Standard for a Rule 50 Judgment as a Matter of Law**

   In deciding a motion for a judgment as a matter of law pursuant to Rule 50, a district court must examine the evidence and draw any inferences in the light most favorable to the non-moving party. See <u>Mangla v. Brown University</u>, 135 F.3d 80, (1st Cir. 1998) (citing <u>Rolon-Alvarado v. Municipality of San Juan</u>, 1 F.3d 74, 76

CIVIL NO. 98-1414 (JP)                3

(1st Cir. 1993)). In addition, the Court may not "consider the credibility of witnesses, resolve conflicts in testimony, or evaluate the weight of the evidence." Katz v. City Metal Co., Inc., 87 F.3d 26, 28 (1st Cir. 1996) (quoting Richmond Steel, Inc. v. Puerto Rican American Ins. Co., 954 F.2d 19, 22 (1st Cir. 1992)). For a Court to submit an issue to the jury, the plaintiff must "present 'more than a mere scintilla' of evidence and may not rely on conjecture or speculation." Id. Ultimately, to grant a Rule 50 motion, the Court must find that as a matter of law, the record would only permit a reasonable jury to reach one conclusion as to the disputed issue. See id.; Mangla, 135 F.3d at 82 (judgment as a matter of law may be granted only if evidence "is such that reasonable minds could not differ as to the outcome.")

### B. Plaintiffs' Title VII Retaliation Claim

In support of his Rule 50 Motion, Defendant argued that there was no evidence presented at trial that Santiago's complaints to Figueroa regarding sexual harassment resulted in retaliation by Lloyd. Lupi's asserted that Santiago's testimony was imprecise and vague, did not give a clear time frame, and that the testimony regarding her complaints to Figueroa involved sex-neutral conduct, such as Lloyd's rudeness and contradictory instructions. Essentially, Defendant argued that Santiago did not complain about sexual harassment, and further, that the conduct she described did not constitute sexual harassment. In addition, Lupi's pointed out that the evidence showed that Lloyd's conduct was directed at

CIVIL NO. 98-1414 (JP)                4

everyone at Lupi's, men and women alike, and was not intended to discriminate.

Plaintiff countered Defendants arguments on several grounds. First, Santiago stated that the behavior she complained of does not have to constitute sexual harassment under the law to support a claim of retaliation. Second, Santiago contended that she testified regarding her reasonable belief that she was sexually harassed, which is what is required under the law, that she kept a diary because she believed she was being sexually harassed, and filed an Equal Employment Opportunity Commission ("EEOC") charge in June 1997 regarding sexual harassment. Third, Plaintiff claimed that there is no evidence that she was aware of Lupi's sexual harassment policy, and fourth, that Figueroa testified that he treated her complaints the same as he would have treated complaints of sexual harassment. Santiago also pointed to Figueroa's testimony regarding sexual jokes made by Lloyd in the workplace.

Regarding Santiago's ultimate burden to show that Lloyd's letter reducing her duties was caused by retaliatory animus, Santiago points to the circumstantial evidence in the record. Specifically, Santiago alleges a "pattern" of retaliatory conduct, beginning with the March 1996 firing of Santiago, and ending with Lloyd's letter. In addition, citing <u>Dichner v. Liberty Travel</u>, 141 F.3d 24 (1st Cir. 1998), Plaintiff asserted that under a "pretext plus" theory, a juror could believe that Lloyd's letter was the result of retaliatory animus.

The Court finds that in the instant case, a reasonable juror could only find that Plaintiff has not met her burden of establishing a case of retaliation under Title VII because of her complaints of sexual harassment. As the Court stated in its Opinion and Order of August 16, 1999, granting in part and denying in part Defendants' summary judgment motion, and in its Order dated August 23, 1999, limiting the scope of trial, Plaintiff must establish and at trial prove by a preponderance of the evidence each of the following elements of her prima facie case: (1) that Santiago engaged in protected conduct under Title VII; (2) that Santiago suffered an adverse employment action; and (3) that a causal connection existed between the protected conduct and adverse action. See McMillan v. Mass. Soc'y for the Prevention of Cruelty to Animals, 140 F.3d 288, 309 (1st Cir. 1998); (citing Fennell v. First Step Designs, Ltd., 83 F.3d 526, 535 (1st Cir. 1996)).

Under Title VII, an employer cannot discriminate against an employee "because he has opposed any practice made illegal by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter." 42 U.S.C. § 2000e-3(a). Complaints to a supervisor about what an employee believed to be sexual harassment fall within this provision. To establish the first prong of her prima facie case, Santiago "need not prove the underlying discriminatory conduct that [she] opposed was actually unlawful," as such a requirement "'[w]ould not only chill the

CIVIL NO. 98-1414 (JP)                6

legitimate assertion of employee rights under Title VII but would tend to force employees to file formal charges rather than seek conciliation of informal adjustment of grievances.'" Little v. United Technologies, 103 F.3d 956, 960 (11th Cir. 1997) (quoting Sias v. City Demonstration Agency, 588 F.2d 692, 695 (9th Cir. 1978)).

Nevertheless, a plaintiff must demonstrate a "good faith, reasonable belief that the employer was engaged in unlawful employment practices," and this burden includes both subjective and objective components. Id. Thus, Santiago must show that she subjectively believed that Lloyd was sexually harassing her, and that her belief was objectively reasonable in light of the facts in the record. See id. The Court finds that Santiago has not met this prong of her prima facie case.[1]

Santiago's testimony reveals that she complained on several occasions to Eduardo Figueroa about what she believed to be "harassment" by Lloyd. Contrary to Plaintiff's attorney's argument, Santiago did not testify and there was no evidence presented at trial that Santiago perceived this so-called "harassment" to be sexual harassment or harassment based on sex.

---

[1] The Court notes that although it previously ruled on summary judgment that Plaintiff had met this prong of her prima facie case, this does not bar a different ruling on a judgment as a matter of law. See Thorpe v. Mutual of Omaha Insurance Co., 984 F.2d 541, 545 (1st Cir. 1993) (Evidence adduced at trial will almost always differ in degree, force, and quantity from that submitted on a motion for summary judgment. The earlier denial of summary judgment standing alone in no way impeaches the later directed verdict.")

AO 72A
(Rev.8/82)

CIVIL NO. 98-1414 (JP)                    7

Further, also contrary to Plaintiff's attorney's characterization, Santiago did not testify that she began to keep a diary because she believed she was being sexually harassed by Lloyd. Santiago specifically testified that she was being "harassed," but not that this harassment was based on sex. (Testimony of Lourdes Santiago, August 24, 1999, Tr. p. 49, lines 10-17).

Santiago testified that she complained to Figueroa or Lupi's attorney, Lebron-Tirado, about the following: (1) an incident in March 1996 where Lloyd said that Santiago was "sharing notes," that she was Figueroa's girlfriend, told her she was "turning into a bitch," and threw a drink on her; (2) receiving "cross orders" or differing orders from both Lloyd and Figueroa about her duties at Lupi's; (3) every time Lloyd was in the Lupi's office he would slam the doors, have a bad attitude and give Santiago "cross" looks; (4) her working environment was very stressful; (5) she was afraid about taking sides against either Lloyd or Figueroa in the Lupi's Board Meeting set for June 13, 1996; (6) the disrespectful manner in which Lloyd addressed her and treated her at manager's meetings; (7) an incident in Old San Juan that occurred on July 26, 1996, in which Lloyd yelled profanities at Santiago, said to stop being Figueroa's girlfriend, and told Santiago to not return to the restaurant. In addition, Santiago's resignation letter, dated June 13, 1996, stated that she was resigning because she was in the middle of a fight between Lloyd and Figueroa.

CIVIL NO. 98-1414 (JP)                8

Santiago did not testify that she subjectively perceived this treatment to be <u>sexual</u> harassment, nor did she testify that she told Figueroa or Attorney Lebron-Tirado that Lloyd's behavior was a result of her sex or constituted sexual harassment. In addition, the testimony of Eduardo Figueroa, that Santiago complained of sexual comments and was "offended" by Lloyd's behavior, does not demonstrate that <u>Santiago</u> subjectively believed Lloyd was sexually harassing her. Further, Santiago's EEOC charge was filed on June 24, 1997, and thus, not relevant to show that Santiago believed in March through August 1996 that she was experiencing harassment based on sex. Therefore, Plaintiff has failed to establish the subjective prong of the "good faith reasonable belief" inquiry.

The Court further finds that no jury could find that a belief that the above-described behavior constituted sexual harassment was objectively reasonable. Although Santiago need not prove that Lloyd's behavior constituted sexual harassment under the law, she must show that her belief that Lloyd's conduct constituted sexual harassment was objectively reasonable. This objectively reasonable inquiry is based on the substantive law of sexual harassment. <u>See Harper v. Blockbuster Entertainment</u>, Corp., 139 F.3d 1385, 1388 n.2 (11th Cir. 1998).

The majority of the incidents described by Santiago as forming the bases for her complaints do not relate to nor are based on sex. The only allegations that can be construed as relating to sex are Lloyd's statements that Santiago was Figueroa's "girlfriend" and

AO 72A
(Rev.8/82)

CIVIL NO. 98-1414 (JP)                9

Lloyd's telling Santiago on one occasion that she was "turning into a bitch." In addition, Figueroa testified that he knew of sexual comments made in the workplace, although Santiago herself did not testify as to such comments. Under the substantive law of sexual harassment, in determining whether a hostile environment exists, a court or jury assesses "the frequency of the discriminatory conduct, its severity, whether it is physically threatening or humiliating or a mere offensive utterance, and whether it reasonably interferes with an employee's work performance." Harris v. Forklift Systems, Inc., 510 U.S. 17, 23 (1993). As stated by the United States Supreme Court, "[t]he critical issue. . . .is whether members of one sex are exposed to disadvantageous terms and conditions of employment to which members of the other sex are not exposed." Oncale v. Sundowner Offshore Services, Inc., 118 S.Ct. 998, 1002 (quoting Harris, 510 U.S. at 25 (Ginsberg, J. concurring)). Thus, ultimately, a plaintiff must prove "that the conduct at issue was not merely tinged with offensive sexual connotations, but actually constituted 'discrimina[tion] ... because of ... sex.'" Id.

No reasonable person could objectively believe that the allegations of a sexual relationship between Santiago and Figueroa were severe enough to constitute sexual harassment. The one instance in which Lloyd called Santiago a "bitch" in March 1996 is not so severe or pervasive, even in the context of Lloyd's other comments, to constitute a reasonable belief of sexual harassment.

CIVIL NO. 98-1414 (JP)          10

In addition, the only testimony regarding sexual comments from Figueroa described the comments as made at women and men alike, and thus, such comments cannot be said to disadvantage women specifically. Therefore, the Court finds that no reasonable juror could find that Santiago engaged in protected conduct under Title VII when she complained to Figueroa about the way in which Lloyd had treated her. Cf. Little, 103 F.3d at 960 (plaintiff's complaint about one racist remark brought eight months after comment was made does not meet the objectively reasonable test); Harvey v. Chevron U.S.A. Inc., 961 F. Supp. 1017, 1033 (S.D. Tx. 1997) (plaintiff's belief that favoritism towards another female employee who was employer's paramour, constituted sexual harassment is not sufficient to satisfy good faith reasonable belief prong of prima facie retaliation claim).

Further, Santiago must ultimately prove by a preponderance of the evidence that Lloyd's letter reducing her duties was motivated by retaliatory animus. See McMillan, 140 F.3d at 309. The Court finds that such a conclusion cannot be reached based on the evidence presented in this case. Plaintiff argues that the timing of the incidents show a pattern of retaliatory conduct, and further, that based on the prima facie case of retaliation and strong evidence of pretext, the court can infer a retaliatory animus.

There is not sufficient evidence of a pattern of retaliation or proximity in time between Santiago's complaints to Figueroa and

AO 72A
(Rev.8/82)

CIVIL NO. 98-1414 (JP)          11

Figueroa's interventions and Lloyd's letter.  First, despite Plaintiff's attorney's argument to the contrary, Figueroa testified that the first complaint he received from Santiago about Lloyd's behavior was in March 1996 in response to her being fired.  When specifically asked by Plaintiff's attorney whether he had received any complaints from Santiago prior to March 1996 about Lloyd, he testified "No."  (Testimony of Eduardo Figueroa, August 25, 1999, Tr. p. 10, lines 15-23.)  Thus, Defendant is correct in asserting that Figueroa's discussion with Lloyd about his treatment of Santiago occurred after the March 1996 incident in which he fired her.  Thus, the March 1996 firing cannot be said to result from a complaint communicated to Lloyd by Figueroa about Lloyd's treatment of Santiago.

Further, viewing the facts in the light most favorable to Plaintiff, Santiago received Lloyd's letter on August 29, 1999.  This is approximately a month and a half after he left his dictated letter in Lloyd's mailbox regarding Lloyd's treatment of employees including Santiago.  The last incident of a complaint to Figueroa, occurring in Old San Juan on July 26, 1996, also occurred over a month before Lloyd's letter.  Thus, these complaints and the August 29, 1996 letter are not so close in time as to permit a reasonable juror to conclude that the reduction of Santiago's duties was motivated by retaliation.

Finally, regarding Plaintiff's "pretext plus" theory, as stated by the First Circuit in <u>Dichner</u>, and refined in <u>Thomas v.</u>

AO 72A
(Rev.8/82)

CIVIL NO. 98-1414 (JP)              12

Eastman Kodak, Civ. No. 98-2231 1999 WL 487158, *16 (1st Cir. July 15, 1999), a Title VII plaintiff may meet her burden to show that the adverse action was motivated by discriminatory animus through the same evidence used to prove her prima facie case "plus" evidence of pretext. Eastman Kodak, 1999 WL at *16. The Eastman Kodak Court elaborated on the "pretext plus" standard, stating that it "'does not necessarily require the introduction of additional evidence' beyond that required to show 'pretext,' i.e., evidence showing that the employer's articulated reason is false." Id. (quoting Dichner, 141 F.3d at 30). Thus, a plaintiff may utilize the same evidence "to support both conclusions, 'provided that the evidence is adequate to enable a rational factfinder reasonably to infer that unlawful discrimination was a determinative factor in the adverse employment action.'" Id. (quoting Rodriguez-Cuervos v. Wal-Mart Stores, Inc., 181 F.3d 15, 22 n. 5 (1st Cir.1999)).

The Court finds that even if Santiago had met her prima facie case of retaliation, it would certainly not be a such a strong case as to lead to an inference of retaliatory animus. See Dichner, 141 F.3d at 30 ("[w]hen the prima facie case is very strong and disbelief of the proffered reason provides cause to believe that the employer was motivated by discriminatory purpose proof of pretext [alone] may be sufficient") (internal quotations omitted). Further, although Santiago need not be required to provide direct evidence of retaliatory animus, the Court finds that based on the circumstantial evidence in the record, no reasonable juror could

CIVIL NO. 98-1414 (JP)             13

conclude that Lloyd's action was taken in retaliation for Santiago's complaints about sexual harassment to Figueroa.

### III. Conclusion

The Court finds that as a matter of law, no jury could conclude that Lloyd's letter reducing Santiago's duties and changing her reporting structure was motivated by retaliation because of her complaints of sexual harassment. Therefore, Defendant's Motion is hereby **GRANTED** and Plaintiff Santiago's remaining claim for retaliation under Title VII is hereby **DISMISSED WITH PREJUDICE**.

**SO ORDERED.**

In San Juan, Puerto Rico, this 3rd day of September, 1999.

_____
JAIME PIERAS, JR.
U.S. SENIOR DISTRICT JUDGE